Good morning, Stacey Tolchin for Mr. Desai. I would like to reserve three minutes of my time for rebuttal. As your honors are aware, this case challenges both the decisions from the board in matter of Velasquez Rios and the decision in matter of Ortega Lopez. If the court vacates or finds that either decision is erroneous, then Mr. Desai would be eligible to apply for cancellation of removal and to apply to remain in the US with his United States citizen children. I would first like to just focus on the Velasquez Rios decision, which of course relates to the potential sentence imposed for a single crime involving moral turpitude. Now at the time of Mr. Desai's 2011 conviction for grand theft under Penal Code 487, the potential sentence of his conviction was 365 days. As your honors are aware, in 2015, the California legislature amended the potential sentence or the maximum sentence for a misdemeanor to be 364 days. And in 2017, they made that retroactive to past or final convictions. It's important to look at why they did that. They did that in order to align the inadmissibility and deportability statutes, because the immigration statute for inadmissibility provides that there's a petty offense exception for somebody who is convicted of an offense with a potential sentence of 365 days or less. But the deportability statute provides that there's an exception from deportability for somebody with a potential sentence of 365, 64 days or less. So there's this issue of just this issue of being deported or removed for a potential sentence of 365 days. And that's why there was this change to the definition of the misdemeanor in California, in order to align with the clear meaning of these removal provisions, which was to not deport somebody for a single misdemeanor CIMT, that's minor. Now, this court is faced with the issue of one, is Garcia Lopez controlling? And if it is, is there either a change in law under the Miller v. Gamby analysis, meaning it's clearly irreconcilable intervening law, or does Brand X apply? Because if neither of those exceptions apply, then Garcia Lopez remains controlling. Now, as to Garcia Lopez, the decision in Garcia Lopez is regarding a wobbler change to a misdemeanor. Notably, in Garcia Lopez, the reduction to the misdemeanor is under 17b3 and not 17b1 of the California Penal Code. What that means, and it's the Garcia Lopez cites US v. Robinson on this, that means that the felony is deemed, I'm sorry, the conviction is deemed to be a felony until there's state court action, reducing it to a misdemeanor under 17b3. 17b3 are the cases that occur once a conviction is final. And that's what's similar to what's happened with this change in the classification of a misdemeanor under Penal Code 18.5. Now, assuming that Garcia Lopez is controlling, then there's no intervening law for purposes of the Miller v. Gamby analysis, right? And recently, this came up and I know in Silva, where we're looking, there might be disagreement with how the law is portrayed. But is there a court decision that's binding that applies here? Exactly on point, right? Because in Garcia Lopez, the statute that was applied to the defendant was the statute that existed at the time of his conviction. This is a proposed retroactive change to existing law. Because at the time of Mr. Desai's conviction, is it Mr. Desai? Yes, Your Honor. Mr. Desai's conviction, the potential sentence was 365 days. So we're not bound by Garcia Lopez, which contemplated a different type of statute. Well, it's not the same statute, clearly, right? Obviously, it is a legislative change. But of course, a legislative change is really a mandate that all the judges follow, right? So the benefit of a legislative change is that each court doesn't have to go in and make a change because here, it applied to all misdemeanors. And obviously, it is a different statute. It's a, you know, reclassification of a felony to a misdemeanor versus a change in the potential sentence. But the premise is there. The premise is that it's the state... So let me stop you for a moment. The premise may be there. I understand your argument. But you started by saying we're bound by Garcia Lopez unless there's a change to intervening law. And I don't see that because Garcia Lopez was addressing a different situation, a different statute for his situation. But surely, Your Honor, if there was no Diaz, and there was no McNeil, and there was no Madder Thomas, that the outcome of this would be pretty clear, which is that under Garcia Lopez, there would have to be recognition by this court and the board of the change under 18.5, right? That's certainly an argument you couldn't make if there weren't Diaz and McNeil and Prado. But that's an argument that could be made. The question that you were addressing was, are we bound by that? In other words, is it precedent squarely on a principle distinction with Garcia Lopez? And that's what I was questioning. Well, Your Honor... So let's talk about why the principle of Garcia Lopez should guide us here. But I don't think we're talking about Brand X or Miller v. Gammy. Okay. So one thing, the principle of Garcia Lopez clearly is that it is the state court that classifies the sentence, even if that's done. Because 17b-3 does encompass changes to a sentence after a conviction is final. This is, again, a point of the Ninth Circuit case is that it's the state court that classifies. And what's notable is that a few years after Garcia Lopez comes down, the court issues Salazar Mojica, which is a criminal resentencing case in 2011. And that comes down prior to McNeil in 2011. So just a month or so later, 17b reduction does not count for purposes of the 1326 criminal resentencing case, because there it's backwards looking. The court looks to whether or not the defendant was deported for a felony offense. And even if it changes later after the deportation, it's backward looking just as the McNeil counsels, right. And so there's a dual track that we're looking at as far as immigration versus criminal sentencing cases. And it's important thing to note, because in the criminal sentencing context, these are recidivist cases, essentially, right? Somebody has a final conviction, they commit an act, and then they're sentenced for the second criminal act, looking back to see what their prior conduct was in the first or the prior sentence was in the first. But in an immigration case, it's a civil consequence that stems directly from the conviction, right? There's no subsequent criminal act. And much of the point of Diaz and McNeil is to in recidivist offenses, there's no deterrence rationale here, because Mr. Desai didn't do anything wrong after his single 2011 misdemeanor, right, he was just put into deportation removal proceedings because of it. And so the rationale of going backward looking and undermining this concept and the principle of Lafarga and Garcia Lopez doesn't apply in the immigration context. Go ahead. I don't want to preterm at Judge Aikuda's question. I'll wait, you go ahead. So the government points to Prado, where the state enacted a statute saying a convicted defendant could get their conviction expunged, recalled or declassified. And we have for immigration law, we held that we would not recognize that policy, but would rely on the historical conviction. So the government argued that that's more directly on point. Do you want to discuss that? Yeah, Your Honor, I think there's a distinction between the conviction and the sentence, right? So a lot of these cases talk about whether or not an expungement has an effect or something after the fact. But of course, an expungement, in theory, erases a conviction, whereas a resentencing classification is different. And so the resentencing has always is a different in a way that's enough in any material way. I mean, the point of Prado was, for federal immigration purposes, we're not going to recognize changes that are made to a defendant's conviction. And I think there was also a resentencing element because of the recall point. Are we going to recognize that for federal immigration purposes and deferring to the BIA, we said no. Well, we obviously for decades, it has been the BIA's practice, as you know, to recognize the sentence reclassification. So there is a difference. And the importance here is the statutory terms, right? So in Diaz, it's really important to look at the language of the use of the term final. In the BIA, we don't have any definition or any restrictions on recognizing potential sentences like we do for convictions. So when Congress in IRA, amended 1101A48A and B, it does talk about convictions, it talks about sentences, but it doesn't talk about potential sentences. Counsel, I was gonna say if I could interject, I'm sorry to have you grilled by more than one judge. But I do have a concern of mine that's a little different than what judge I could have focused on. And I don't know, were you able to hear the arguments in the two earlier cases? Yes, Your Honor. Okay, so then you already heard my questions. And my concern is really a federalism type concern. That is why should a state be able to alter a punishment retroactively, and thereby change the federal immigration consequences? The state is the body that enters the commission in the first place, right? So it is the state that defines the punishment. So if Congress did anything in the federal statute that would limit some kind of recognition of a post final order change, it would be the state that controls it. And we know that Congress had significant issues with changes to convictions. And that is why they created the amendments under 1101A48. But nothing about those amendments applies to potential sentences. And so absent Congress's express language, limiting changes, if for instance, when Congress amended 1101A48B regarding sentences to not recognize, you know, suspensions, etc., it certainly could have put language in the statute to not recognize convictions that are sentences that are changed post final order. I mean, even the language under Section 841 of 21 U.S.C. that's addressed in Diaz, that use of the term final does show Congress's intent. But we don't have that language here. I was particularly interested in this case that the state of California, they were enacting 18.5, specifically to affect federal immigration law. So is there any limit to your principle? In other words, could a state with the purpose of affecting federal law make changes in state criminal acts, or I guess others in order to change the results of federal law, in your view? Is there any limit to that principle? There's limits when Congress has said, you can't do that. That's clear, right? But you know, there's no problem. Nobody takes issue with Congress prospectively redefining a misdemeanor to include only 364 days, right? Nobody says they can't do that. The only issue is, can they do it retroactively? And the state can do that in order to be aligned with the immigration laws, or even frankly, to avoid the immigration laws, but they have to work with what Congress has expressed languages. And so here's the answer is no, that there is no limit to that. Congress hasn't spoken to the issue. Congress is explicit, then obviously that that follows. And I'd like to reserve my remaining time if I may. Counsel Judge Gould, I'm not gonna let you get off just yet. I'm gonna actually have a question also. So I've been patient. Well, we'll give you some extra rebuttal time. So don't worry. I think what you should do is try to answer as fully as you can to these questions. So you heard Mr. Lutz's argument for the government in the earlier case. So is it your position that if a state, if Mr. Desai had initially been sentenced to a misdemeanor, which wouldn't bring him under the statute, under the federal statute, but if the state decided that they immigration consequences in federal law, could a state increase his sentence retroactively and make it more than 364 and say now it's going to be more than a year and get against all that he would lose the ability to argue for cancellation? Your Honor, I think the ex post facto clause would apply there. Because obviously, the premise is that you have to have no this is of the consequences of the crime. And so I don't think that a state can retroactively increase a sentence. I think it can only decrease. So I don't think it's a situation that would happen. So it'll only go one direction. Okay. And my other question is like, how do you respond to Mr. Lutz's argument that he made earlier, that the consequence of permitting retroactive change could lead to different states taking different approaches and and that would be contrary to a federal immigration law desire for uniformity. So as is right now, some states have a misdemeanor that's 365 or less, some have 364 or less. So they're still all over the place. Some states have wobblers like California as well and reduction. So it really is all over the place anyway. I mean, the same conduct that's committed in one state will have a potential sentence of more than 365 days in one I'm sorry, yeah, more than 364 days in one, but less than another. So the human the uniformity issue doesn't make sense. To be honest, to me, the uniformity issue is this one day discrepancy issue between the removal statutes between deportability and inadmissibility, right? To me, that's, that's why they the California did try to make this change so that they would make that make sense. I mean, how does it make sense that the petty offense exception for inadmissibility says a maximum of 300 more than 365 days, but the deportability Brown says that there's a maximum of 365 or more and you're barred. It doesn't make any sense. So based on that, that's all California tried to do was to actually make their definition of a misdemeanor uniform for purposes of the immigration laws. But you know, we're all over the place in the country on what the definition of a misdemeanor is. So all we can try to do is conform to what the federal law is. Okay, thank you. So I know, Judge Ezra. No, actually, you asked the precise question I was going to ask. So she's off the hook. Well, I don't even know I'm going to give Miss Tolkien some extra time. It doesn't seem I can induce Judge Ezra to prior question. So we'll let Miss Tolkien sit down and and we'll give you three minutes of rebuttal time. Thank you. Because I'm sure that Mr. Robbins for the government will have lots to say. May it please the court. My name is Jonathan Robbins. And I'm here on behalf of William Barr, the United States Attorney General. And Judge Gould, I find myself in a unique position of not having a lot to add based on my colleague, Mr. Lutz's argument, he made pretty ably a lot of points that I was going to make in this argument. And I'm sure you're aware there's great deal of overlap in the situations that we have in these cases. So I will rather than being too repetitive, there will necessarily be some repetition, focus a little bit on some of the arguments that are raised in this. Don't worry about repetition, because we're giving Miss Tolkien extra time. So if your repetition takes a little more, it's no problem. Okay. Well, I would first respond to Miss Tolkien's argument and petitioners argument that this court is bound by Garcia Lopez versus Ashcroft. It's bound in the sense that it is binding authority. But I think as Judge Akuta pointed out, it's not binding in the sense that it's on point with this particular case. It doesn't control the outcome in this case. My colleague has already discussed why that case is an opposite, in that it was dealing with a completely different situation involving a state court classification of whether a Wobbler statute was a felony or misdemeanor, and didn't address the situation where we have here, where we have a state legislature reclassifying the sentencing scheme. But I would even point the court specifically to language out of Garcia Lopez that really emphasized the importance of the state court treatments in that case. It was discussing, the Garcia Lopez court was specifically discussing Lafarga. And it said that we note that in construing 17b and its effect on the categorization of an offense, courts have repeatedly emphasized the significance of a state court's actions in specifically determining that the offense is a misdemeanor. So the court in Garcia Lopez was specifically focused on the state court action in that case. And as of course, we know in this case, that's not pertinent here. The cases that are pertinent, the cases outside of Garcia Lopez and Lafarga that are far more pertinent to this case are, as my colleague discussed, McNeil and Diaz. Those cases are directly applicable to this case and are far more similar. They both deal with state retroactive legislative sentencing schemes. They both involve a backward looking inquiry that we have in this case where we're looking backward at the to the what could have been imposed at the time of conviction. And so those cases were the appropriate cases for the board to rely on in Velazquez Rios, and by extension, in this case as well. So the notion that Garcia Lopez is binding on this court and controls the outcome, we would reject that and we think the court should reject that as well. There's an argument that's also raised in petitioners brief that I don't think was raised in the prior case. They argue that the full faith and credit clause is applicable here. As we pointed out in our briefs, the full faith and credit clause is not in our statute is not implicated in situations where we're assessing whether a state conviction and we're looking at how it falls within the federal scheme. I would say to a plethora of circuit case law, including this court, that have rejected the application of a full faith and credit clause. I would also actually not clause the full faith and credit statute that was enacted. But I would also point out that even if there wasn't that whole body of case law, the Attorney General's recent decision in matter of Thomas and Thompson has specifically explained to the extent that the board has sometimes previously relied on that statute. It was improper to do so because the statute actually deals with what happens in course and doesn't apply to administrative agencies. So any reliance on that full faith and credit statute or anything the board has done in the past, that that case law has been abrogated. You're not. I don't know. Petitioner was in an unfortunate situation from a legal argument perspective because their opening relief brief relied heavily on case law that has now been abrogated. They relied heavily on Cota Vargas and matter of song and other cases of the like by the board that had begun to deviate from the general principle that when a statute, a state conviction is altered for rehabilitative or ameliorative purposes, it wouldn't have effect for immigration purposes. But if if there was some sort of substantive defect in the conviction, then that would have effect for for federal immigration purposes. The case law with upon which they relied on the opening brief began to deviate a bit from that rule. And of course, we filed the 28 J that points out that in matter of Thomas and Thompson, the attorney general abrogated that and really course corrected back to the original rule, which has long been espoused by the courts of appeals, including this court. So we argue, of course, in our brief that those cases were an opposite anyway, but now they're really an opposite given that they've been abrogated. So any reliance on that case law is really no longer, I think, a valid argument. Petitioners also sort of attempt to rely on a different set of cases. And they argue that the rationales of McNeil and Diaz, they they were raised in the criminal context. And for some reason, that shouldn't apply in the immigration context. Your Honor has already pointed out that Prado applies this in the federal immigration context. So I would say that's already contrary to this court's law. But it's also I think, contrary to sort of what we commonly recognize about the way we deal with criminal law in the immigration context. And I'm sure Your Honors are more than approach is in the way we analyze criminal statutes. And there's a huge amount of overlap in the way we treat the criminal statutes that we do in immigration statutes. So for a petitioner to suggest that that is somehow some sort of a valid distinction, I don't think finds any support in the case law and really is, is contrary to the way we normally deal with these. I mean, certainly when we're looking at cases under the categorical approach for whether a sentencing enhancement is warranted, or the ACCA, excuse me, whether a sentencing enhancement is warranted, that same analysis applies in the immigration context. And there's, and the courts have repeatedly recognized that. So this distinction between the criminal and immigration proceedings, I don't think finds a lot of support in any authority that I can find. The cases, the petitioner cited to a case to sort of support this criminal versus immigration distinction, the Salazar-Mejica case. But when you look at that case, the court wasn't reaching the conclusion it did because of any distinction between a criminal and immigration case. The issue in that case was what the pertinent time that was being analyzed under that statute was. In this case, we're looking at the time of conviction. In the Salazar-Mejica case, the court was looking at whether a felony had been committed prior to deportation. So the time period that was looked at was different. And yes, it was also a backward looking inquiry. But the distinction between the Salazar-Mejica case and the Garcia-Lopez case didn't have anything to do with a distinction between criminal law and immigration law. The distinctions in those cases were very different. And again, Garcia-Lopez is not controlling the case for all the reasons that have already been discussed. It didn't really come up in the opening brief. I don't have a whole lot more to say that hasn't already been said about Velazquez-Rios. If your honors have any questions about it, I could. Otherwise, I can move on to the second published decision that's pertinent in this case and the temporal limitation and whether it carries over into the cancellation statute. So if your honors have any other questions, the only thing I would say is I would urge the court to reject the petitioner's scheme to create a situation where the immigration consequences of a conviction basically blow whichever way the 50 states wind blows. That would create a real chaotic scheme. And while I certainly take the petitioner's point that the scheme now is very complex and often creates differences between the states, the notion that it should be made even worse, that it should create situations where criminal defendants don't even know what the consequences of their crimes are for immigration purposes, the court should reject that. And we think that that takes things a step too far and allows the state of California to usurp the policy choices that are entrusted to the federal government on immigration cases. So unless there are any questions on that, I will move on. Okay, so moving on to the Ortega-Lopez case. This case is slightly different from the first case on the docket in that we're not dealing with the whether or not the crime is one involving moral turpitude. This case involves the temporal limitation in the removal statute and whether in the CINT statute and whether it carries over into the cancellation of removal statute. Now we're in a position in this case already where we are absolutely at Chevron step two. This court in Lozano Arradondo has already said that the statute is ambiguous and specifically remanded the case to the board to provide a reasoned analysis as to whichever way it was going to interpret the statute. Now, I think a simple reading of Ortega-Lopez, anybody reading that case, I think would be hard pressed to say that the board wasn't providing a pretty well reasoned analysis. I know the petitioner has certainly asserted in his brief that it's not the best analysis. We happen to think it is. But the question is not whether or not it's the best analysis. The question is whether it is a reasonable analysis. And we think that it certainly is. Did Lozano Arradondo say that that interpretation that the IAA took was permissible? Did it say it was not permissible? What did we say in Lozano Arradondo? Well, it said that the statute was ambiguous, but there wouldn't be much point in remanding a case to the board if there was only one reasonable outcome to the case, right? I mean, it's implicit in remand for the board to provide a reasoned explanation is that there's more than one reasonable interpretation. If there was only one reasonable interpretation, as petitioner argued, then there wouldn't have been a need to remand the case in the first place. So what the Lozano Arradondo case is a little bit unusual in that it was, it seemed to be strongly suggesting a reasoned interpretation that might be permissible and seemed to be suggesting that the board should consider that reasoned interpretation. And the board did consider that interpretation, but rejected it for some very persuasive reasons in my view. The first reason was that it said that it had been contrary to the overall purpose of Congress's enacting the statute when Congress specifically intended to separate out the terms admission and entry. The Lozano Arradondo court somewhat unusually suggested that the board should consider conflating the two terms. And the board pointed out that not only was this contrary to the Congress's purpose in enacting the statute, it was also contrary to a prior precedent of this court, which had admonished the board for conflating those two concepts. So I think that's a pretty persuasive reason for the board to reject the suggestion from Lozano Arradondo and to follow Congress's intent in refusing to The board also pointed out that Congress had left the term entry in other portions of the statute, indicating its intent to keep the terms separate. I would also point out that also persuasive is that every other circuit court to have considered this issue have all reached the same conclusion that the temporal requirement does not extend into the cancellation of removal statute. So petitioner is asking this court to deviate from the weight of authority and all the other circuits that have already addressed this issue. And, and which this court at one point had deferred to as well, but Lozano Arradondo seemed to perhaps undo that and send things back for the board to give more reason. Petitioners also attacked the Ortega-Lopez decision in what they claim was the board's failure to consider the legislative history. But a simple reading of the Ortega- Lopez decision really belies that. The board dedicated a great deal of its decision to analyzing the legislative history and explaining why it did not think it was persuasive. Among those, there's a whole plethora of reasons why that is, which petitioner don't even respond to in their opening or reply brief. But to suggest that the board somehow ignored the legislative history, I think is inaccurate based on the specific analysis that the board provided. Do your honors have any specific questions about the, the board's rationale on I mean, given the fact that it is consistent with all the other circuit courts to have reached this conclusion. I mean, I think it would be hard for us to say it's not at least a reasonable explanation of why it was reaching the, this particular interpretation of the statute. I don't have a whole lot more to add, unless there are any other specific questions that your honors are interested in. I don't have any. No questions here. Okay. No questions. In that case, I'll simply thank the court for its time and have a good day. Thank you. Okay, Ms. Tolton. Your honor, just to go back to Judge Ikuti, you had brought up the Prado decision. Wait, wait. Could the courtroom deputy please put three minutes on the clock from Ms. Tolton. Your honor, so going back to the Prado decision from this year, that was an interesting case in that the sentence was irrelevant for the consequence there, the consequence being drug trafficking, right? The drug trafficking immigration law statute doesn't matter. It doesn't matter if it's a misdemeanor or a felony. If you've engaged in drug trafficking period, then you are inadmissible. And so it is, I think it's distinguishable that from this case here, where we're looking at the actual potential sentence, and that's what creates the consequence of deportability or ineligibility for cancellation of removal. Going also back to the issue of a legislative change versus a court imposed change. I think we're even stronger in a situation where we have a legislative change because it's mandating that all of the courts reclassify or redefine a misdemeanor. So again, rather than having individual courts go back and change each offense, and exercising their discretion, for instance, here, the legislature actually required that all of the courts do that by legislation. And so we're even in a stronger context than in Garcia Lopez, where it was court imposed on the sentence. And last, just going to the issue of the conviction versus sentence, I think, opposing counsel conflates the concepts of what is a conviction versus what is a sentence. And for decades after IRA, the court case law of the board and this court's case law did distinguish between those two. And so when some conviction was expunged or set aside, that was not recognized because of the express language of Congress in the statute at 1101 a 48. But when a sentence was changed, that was recognized, because there was no expressed language for on 1101 a 48. Now, the Attorney General has withdrawn from that position under matter of Thomas and Thompson. But again, 1101 a 48 b does not have any language that references potential sentences. Now, obviously, matter of Thomas and Thompson came out in the middle of briefing on this case. And so if the court is concerned as to whether or not the Attorney General's analysis regarding 1101 a 48 does apply, then a remand would be appropriate for the the agency determined if it's analysis and Thomas and Thompson applies to potential sentences as well. And if there's no other further questions, I'll rest here. So I have no question. Nope. Nope. Hearing none. I want to thank Ms. Tolchin and Mr. Robbins for their excellent arguments. This case shall now be submitted. And the parties will hear from us in due course.
judges: Gould, Ikuta, Ezra